## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| MOSAIC COMPANIES, LLC, *et al.*, | Case No. 25-11296 (CTG) |
| Debtors.[1] | Jointly Administered |

## JOINT CHAPTER 11 PLAN OF LIQUIDATION

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Derek C. Abbott (No. 3376)
Matthew B. Harvey (No. 5186)
Sophie Rogers Churchill (No. 6905)
Avery Jue Meng (No. 7238)
1201 Market Street, 16th Floor
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: dabbott@morrisnichols.com
    mharvey@morrisnichols.com
    srchurchill@morrisnichols.com
    ameng@morrisnichols.com

*Counsel to the Debtors and Debtors in Possession*

---

THIS PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT. THIS IS NOT AN OFFER OR SOLICITATION OF AN OFFER OR ANY OTHER SOLICITATION WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE. ACCEPTANCE OR REJECTION OF THE PLAN MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THE INFORMATION IN THE PLAN IS SUBJECT TO CHANGE.

---

Dated: August 5, 2025
     Wilmington, Delaware

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal EIN, are as follows: Mosaic Companies, LLC (0759); Surfaces Southeast HoldCo, LLC (8822); Mosaic Midco, LLC (0759); Retile, LLC (7285); Wallec Enterprises, LLC (4482); CAYP, LLC (6869); Surfaces Southeast, LLC (9283); Walker & Zanger, LLC (6215); WZCA Holdings, LLC (9859); Mustang Stone Quarries, LLC (9922). The Debtors' mailing address is 400 Technology Ct. Ste R, Smyrna, GA 30082.

# TABLE OF CONTENTS

SECTION 1.        DEFINITIONS AND INTERPRETATION. .......................................................1

   A.    Definitions. ..............................................................................................1
   B.    Interpretation; Application of Definitions and Rules of Construction..................11
   C.    Controlling Document. ...........................................................................12

SECTION 2.        ADMINISTRATIVE EXPENSE, FEE CLAIMS, PRIORITY TAX
               CLAIMS, AND U.S. TRUSTEE FEES. .................................................12

   2.1    Administrative Expense Claims....................................................................12
   2.2    Time for Filing Administrative Expense Claims. ..................................................12
   2.3    Fee Claims. ...........................................................................................13
   2.4    Priority Tax Claims.................................................................................14
   2.5    U.S. Trustee Fees...................................................................................15
   2.6    Restructuring Expenses............................................................................15

SECTION 3.        CLASSIFICATION OF CLAIMS AND INTERESTS. ...................................15

   3.1    Classification in General...........................................................................15
   3.2    Formation of Debtor Groups for Convenience Only. ...............................................15
   3.3    Summary of Classification..........................................................................16
   3.4    Special Provision Governing Unimpaired Claims..................................................16

SECTION 4.        TREATMENT OF CLAIMS AND INTERESTS. ............................................16

   4.1    Other Priority Claims (Class 1)...................................................................16
   4.2    Prepetition Term Loan Secured Claims (Class 2)................................................17
   4.3    General Unsecured Claims (Class 3). ............................................................17
   4.4    Subordinated Claims (Class 4)....................................................................18
   4.5    Interests (Class 5).................................................................................18
   4.6    Intercompany Claims and Intercompany Interests (Class 6A and Class 6B). .......18

SECTION 5.        ACCEPTANCE OR REJECTION OF THE PLAN. ...........................................19

   5.1    Class Acceptance Requirement......................................................................19
   5.2    Tabulation of Votes on a Non-Consolidated Basis.................................................19
   5.3    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or
       "Cramdown". ..........................................................................................19
   5.4    Elimination of Vacant Classes. ...................................................................19
   5.5    Voting Classes; Deemed Acceptance by Non-Voting Classes. ...........................19

SECTION 6.        MEANS FOR IMPLEMENTATION. ...............................................................19

   6.1    Joint Chapter 11 Plan. .............................................................................19
   6.2    Plan Funding. .......................................................................................20
   6.3    Liquidating Trust. ..................................................................................20

| | | |
|---|---|---|
| 6.4 | Elimination of Duplicate Claims | 23 |
| 6.5 | Corporate Action. | 23 |
| 6.6 | Directors, Officers, Managers, Members and Authorized Persons of the Debtors. | 23 |
| 6.7 | D&O Policy. | 24 |
| 6.8 | Indemnification of Managers, Directors, Officers and Employees. | 24 |
| 6.9 | Withholding and Reporting Requirements. | 24 |
| 6.10 | Exemption From Certain Transfer Taxes. | 25 |
| 6.11 | Effectuating Documents; Further Transactions. | 25 |
| 6.12 | Preservation of Rights of Action. | 25 |
| 6.13 | Closing of the Chapter 11 Cases. | 26 |
| 6.14 | Dissolution of the Committee. | 27 |

SECTION 7.    DISTRIBUTIONS. ...27

| 7.1 | Distribution Record Date. | 27 |
| 7.2 | Date of Distributions. | 27 |
| 7.3 | Delivery of Distributions. | 27 |
| 7.4 | Manner of Payment Under Plan. | 27 |
| 7.5 | Minimum Cash Distributions. | 28 |
| 7.6 | Setoffs. | 28 |
| 7.7 | Allocation of Distributions Between Principal and Interest. | 28 |
| 7.8 | No Postpetition Interest on Claims. | 28 |
| 7.9 | No Distribution in Excess of Amount of Allowed Claim. | 28 |

SECTION 8.    PROCEDURES FOR DISPUTED CLAIMS. ...29

| 8.1 | Objections to Claims. | 29 |
| 8.2 | Allowance of Claims. | 29 |
| 8.3 | Estimation of Claims. | 29 |
| 8.4 | No Distributions Pending Allowance. | 29 |
| 8.5 | Resolution of Claims. | 29 |
| 8.6 | Amendments to Claims and Late Filed Claims. | 30 |

SECTION 9.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES. ...30

| 9.1 | Rejection of Executory Contracts and Unexpired Leases. | 30 |
| 9.2 | Claims Based on Rejection of Executory Contracts and Unexpired Leases. | 30 |
| 9.3 | Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. | 31 |
| 9.4 | Modifications, Amendments, Supplements, Restatements, or Other Agreements. | 31 |
| 9.5 | Reservation of Rights. | 32 |

SECTION 10.    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE. ...32

| 10.1 | Conditions Precedent to the Effective Date. | 32 |
| 10.2 | Waiver of Conditions Precedent. | 33 |
| 10.3 | Substantial Consummation. | 33 |

10.4    Notice of Effective Date. ..................................................................................33
10.5    Effect of Vacatur of Confirmation Order...........................................................33

SECTION 11.    SETTLEMENT, RELEASES, INJUNCTIONS, AND RELATED
PROVISIONS. ..........................................................................................................34

11.1    Release of Liens. .................................................................................................34
11.2    Binding Effect....................................................................................................34
11.3    Term of Injunctions or Stays...............................................................................34
11.4    Releases by the Debtors. .....................................................................................34
11.5    Exculpation. .......................................................................................................35
11.6    Injunction. ..........................................................................................................35

SECTION 12.    RETENTION OF JURISDICTION. ...................................................36

SECTION 13.    MISCELLANEOUS PROVISIONS..................................................38

13.1    No Revesting of Assets.......................................................................................38
13.2    Subordinated Claims. .........................................................................................38
13.3    Payment of Statutory Fees. .................................................................................38
13.4    Amendments. ......................................................................................................39
13.5    Revocation or Withdrawal of the Plan.................................................................39
13.6    Severability of Plan Provisions Upon Confirmation. ...........................................39
13.7    Governing Law. ..................................................................................................40
13.8    Time. ..................................................................................................................40
13.9    Additional Documents. .......................................................................................40
13.10   Immediate Binding Effect....................................................................................40
13.11   Successor and Assigns. .......................................................................................40
13.12   Entire Agreement. ...............................................................................................40
13.13   Notices. ..............................................................................................................41

Each of the Debtors proposes the following joint chapter 11 plan of liquidation pursuant to section 1121(a) of the Bankruptcy Code.  Capitalized terms used herein shall have the meanings set forth in <u>Section 1.A</u>.

## SECTION 1.    DEFINITIONS AND INTERPRETATION.

### A.    Definitions.

1.1.    ***503(b)(9) Claims*** means Claims that have been timely and properly filed prior to the Bar Date and that are granted administrative expense priority treatment pursuant to section 503(b)(9) of the Bankruptcy Code.

1.2.    ***Administrative Expense Claim*** means any Claim for costs and expenses of administration during the Chapter 11 Cases pursuant to sections 328, 330, 363, 364(c)(1), 365, 503(b), 507(a)(2) or 507(b) of the Bankruptcy Code, including (i) 503(b)(9) Claims, (ii) Fee Claims and (iii) U.S. Trustee Fees.

1.3.    ***Administrative Expense Claims Bar Date*** means the date that is thirty (30) days following service of notice of the occurrence of the Effective Date.

1.4.    ***Affiliate*** has the meaning set forth in section 101(2) of the Bankruptcy Code.

1.5.    ***Allowed*** means, with reference to any Claim or Interest, a Claim or Interest or any portion thereof (i) arising on or before the Effective Date as to which a Proof of Claim or Interest has been filed and (A) no objection to allowance or priority, and no request for estimation or other challenge, including, without limitation, pursuant to section 502(d) of the Bankruptcy Code or otherwise, has been interposed and not withdrawn within the applicable period fixed by the Plan or applicable law, or (B) any objection has been determined in favor of the holder of the Claim or Interest by a Final Order; (ii) that is allowed, compromised, settled, or otherwise resolved pursuant to the authority of the Debtors or the Liquidating Trustee, as applicable; (iii) as to which the liability of the Debtors or the Liquidating Trust, as applicable, and the amount thereof are determined by a Final Order of a court of competent jurisdiction; (iv) that is listed in the Schedules as liquidated, noncontingent, and undisputed, and is not superseded by a Proof of Claim; or (v) expressly allowed hereunder; <u>provided</u>, notwithstanding the foregoing, (y) unless expressly waived by the Plan, the Allowed amount of Claims or Interests shall be subject to, and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable, and (z) the Liquidating Trustee shall retain all claims and defenses with respect to Allowed Claims that are Unimpaired pursuant to the Plan; <u>provided</u>, <u>further</u>, that any Claim or Interest (i) paid or required to be paid by a purchaser pursuant to a Bankruptcy Court-approved purchase agreement or order approving a sale of certain of the Debtors' assets during the course of these Chapter 11 Cases or (ii) listed in the Schedules that has been paid by the Debtors (x) after the Petition Date pursuant to an order of the Bankruptcy Court, (y) before the Petition Date and was inadvertently listed in the Schedules, or (z) paid by the Debtors or assumed or paid by a Bankruptcy Court-approved purchaser pursuant to a Bankruptcy Court-approved Asset Sale, shall not be considered an Allowed Claim.

1

1.6.        ***Artivo Sale*** means the Asset Sale contemplated by the *Debtors' Motion for Entry of an Order (I) Authorizing the Sale of Substantially All Debtor Walker & Zanger, LLC's Assets and Certain Assets of Debtor Surfaces Southeast, LLC, to WZ Buyer, LLC, Free and Clear of All Liens, Claims, Encumbrances, and Other Interests; (II) Approving the Debtors' Entry Into the Asset Purchase Agreement with WZ Buyer, LLC, and Certain Ancillary Agreements; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases to WZ Buyer, LLC; and (IV) Granting Related Relief* (D.I. 23).

1.7.        ***Assumption Schedule*** means the schedule of Executory Contracts and Unexpired Leases to be assumed or assumed and assigned by the Debtors pursuant to the Plan, section 365 of the Bankruptcy Code and Section 9 hereof, which will be included in the Plan Supplement, as may be amended, modified, or supplemented from time to time in accordance with the Confirmation Order.

1.8.        ***Asset Sale*** means a sale, conveyance, transfer, or other disposition to, or any exchange of property with, any Person, in one transaction or a series of transactions, of all or any part of the Debtors' or any of their respective Subsidiaries' businesses, assets or properties of any kind, whether real, personal, or mixed and whether tangible or intangible, whether now owned or hereafter acquired, including without limitation, the Artivo Sale.

1.9.        ***Avoidance Action*** means any and all actual or potential claims and causes of action, other than those sold through the Artivo Sale or any other Asset Sale approved by the Bankruptcy Court, arising under and/or assertable by the Debtors under chapter 5 of the Bankruptcy Code (including, but not limited to, sections 502(d), 510, 542 through 551, 553, and 724(a) of the Bankruptcy Code), including any claim or cause of action to avoid a transfer of property or an obligation incurred by the Debtors, equitable subordination or recovery actions or proceedings, or under similar or related state or federal statutes and common law of the United States or similar applicable foreign laws or regulations, including fraudulent transfer laws.

1.10.        ***Ballot*** means the form distributed to each holder of an Impaired Claim that is entitled to vote to accept or reject this Plan.

1.11.        ***Bankruptcy Code*** means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended from time to time, as applicable to the Chapter 11 Cases.

1.12.        ***Bankruptcy Court*** means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

1.13.        ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Cases, and any local rules of the Bankruptcy Court.

1.14.        ***Bar Date*** means the dates fixed by order(s) of the Bankruptcy Court (including this Plan or the Confirmation Order), including the Governmental Bar Date, by which

any Persons asserting certain Claims against any Debtor must have filed a Proof of Claim or application for allowance of such Claim (as applicable) with the Bankruptcy Court against any such Debtor or be forever barred from asserting such Claim.

1.15. **Business Day** means any day, other than a Saturday, Sunday, "legal holiday" (as defined in Bankruptcy Rule 9006(a)) or court holiday of the Bankruptcy Court.

1.16. **Cash** means legal tender of the United States of America and equivalents thereof.

1.17. **Causes of Action** means, without limitation, any and all actions, Avoidance Actions, proceedings, agreements, causes of action, controversies, demands, rights, Liens, indemnities, guaranties, accounts, defenses, offsets, powers, privileges, licenses, liabilities, obligations, rights, suits, damages, judgments, Claims, any right of setoff, counterclaim, or recoupment, any claim for breach of contract or for breach of duties imposed by law or in equity, any claim or defense including fraud, and any demands whatsoever owned by the Debtors, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, disputed or undisputed, secured or unsecured, whether assertable directly, indirectly, derivatively or in any representative or other capacity, existing or hereafter arising, in contract or in tort, in law or in equity, or otherwise pursuant to any other theory of law, based in whole or in part upon any act, failure to act, error, omission, transaction, occurrence or other event arising or occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

1.18. **Chapter 11 Cases** means the jointly administered cases of the Debtors under chapter 11 of the Bankruptcy Code styled *In re Mosaic Companies, LLC., et al.*, Case No. 25-11296 (CTG).

1.19. **Claim** means any "claim" (as defined in section 101(5) of the Bankruptcy Code) against the Debtors, including, without limitation, any Claim arising after the Petition Date.

1.20. **Claims Agent** means Epiq Corporate Restructuring, LLC, or any other entity approved by the Bankruptcy Court to act as the Debtors' claims and noticing agent pursuant to 28 U.S.C. § 156(c).

1.21. **Claims Objection Deadline** means the date that is 180 days after the Effective Date, subject to extension by the Bankruptcy Court.

1.22. **Class** means any group of Claims or Interests classified pursuant to Section 3 of the Plan.

1.23. **Class A Liquidating Trust Interests** means the non-transferrable interests in the Liquidating Trust, which shall be distributed to holders of Allowed Prepetition Term Loan Secured Claims, in accordance with Section 4.2 of the Plan and the Liquidating Trust Agreement.

1.24.    ***Class B Liquidating Trust Interests*** means the non-transferrable interests in the Liquidating Trust, which shall be distributed to holders of Allowed General Unsecured Claims, in accordance with Section 4.3 of the Plan and the Liquidating Trust Agreement.

1.25.    ***Committee*** means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in these Chapter 11 Cases.

1.26.    ***Confirmation*** means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

1.27.    ***Confirmation Date*** means the date on which the Bankruptcy Court enters the Confirmation Order.

1.28.    ***Confirmation Hearing*** means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.29.    ***Confirmation Order*** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Prepetition Term Loan Administrative Agent.

1.30.    ***Consummation*** means the occurrence of the Effective Date of the Plan.

1.31.    ***Cure Obligation*** means all obligations required to cure any defaults, to the extent required by section 365 of the Bankruptcy Code, under any Executory Contract or Unexpired Lease that is to be assumed or assumed and assigned by the Debtors pursuant to Section 9 hereof and sections 365 and 1123 of the Bankruptcy Code.

1.32.    ***D&O Policy*** means any insurance policy for, among others, directors, members, trustees, and officers (or any equivalents) and liabilities relating thereto, in each case, maintained by the Debtors and/or the Debtors' Estates, and all agreements, documents or instruments relating thereto, including any runoff policies or tail coverage.

1.33.    ***Debtors*** means Mosaic Companies, LLC; Surfaces Southeast Holdco, LLC, Mosaic Midco, LLC; Retile, LLC; Wallec Enterprises, LLC; CAYP, LLC; Surfaces Southeast, LLC; Walker & Zanger, LLC; WZCA Holdings, LLC; and Mustang Stone Quarries, LLC.

1.34.    ***Disallowed*** means a Claim against a Debtor, or any portion thereof, (i) that has been disallowed by a Final Order of the Bankruptcy Court, a settlement, the Plan, or by final determination of the Liquidating Trustee, (ii) that is listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or applicable law, or (iii) that is not listed in the Debtors' Schedules and as to which a Bar Date has been established but no Proof

of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or under applicable law.

1.35.    **_Disbursing Agent_** means an entity selected to make Distributions at the direction of the Liquidating Trustee, which may include, but is not limited to, the Claims Agent, the Liquidating Trustee, the Debtors, or the Wind-Down Estates.

1.36.    **_Disclosure Statement_** means the disclosure statement relating to this Plan, as such disclosure statement may be amended, modified, or supplemented from time to time (including, without limitation, all exhibits and schedules thereto).

1.37.    **_Disputed_** means, with respect to a Claim, a Claim against a Debtor (i) to the extent such Claim, or a portion thereof, is neither Allowed nor Disallowed, or (ii) held by a Person or Entity against whom or which any of the Debtors, the Liquidating Trust or the Liquidating Trustee has commenced a proceeding, including an objection to such Claim.

1.38.    **_Disputed Claims Reserve_** means Liquidating Trust Assets allocable to Disputed Claims.

1.39.    **_Distribution_** means payment or distribution of consideration to holders of Allowed Claims pursuant to this Plan in respect of the holder's Allowed Claim.

1.40.    **_Distribution Date_** means a date or dates, including the Initial Distribution Date, as determined by the Debtors or the Liquidating Trustee, as applicable, in accordance with the terms of the Plan, on which the Debtors or the Liquidating Trustee makes a Distribution to holders of Allowed Claims.

1.41.    **_Distribution Record Date_** means the Effective Date of the Plan.

1.42.    **_Effective Date_** means the date on which all conditions to the effectiveness of the Plan set forth in Section 10 hereof have been satisfied or waived in accordance with the terms of the Plan. A notice of the Effective Date shall be filed by the Debtors with the Bankruptcy Court within one business day after its occurrence.

1.43.    **_Entity_** has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.44.    **_Estate_** or **_Estates_** means individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

1.45.    **_Exculpated Parties_** means collectively, and in each case solely in their capacity as such: (i) the Debtors; (ii) the current managers, directors, officers, authorized persons, and members of management of the Debtors; (iii) the Committee and each of its members; and (iv) to the extent such parties are or were Estate fiduciaries at any time between the Petition Date and the Effective Date, the successors and assigns, subsidiaries, members, employees, partners, managers, officers, directors, agents, attorneys, advisors, accountants, financial advisors, investment bankers, consultants, and other professionals of or for any of the Persons identified in (i) through (iii) above on or after the Petition Date solely in their capacity as such.

1.46.    ***Executory Contract*** means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.47.    ***Fee Claim*** means a Claim for professional services rendered or costs incurred on or after the Petition Date through the Effective Date by professional persons retained by the Debtors, the Committee, and any other official committee appointed in these Chapter 11 Cases pursuant to sections 327, 328, 329, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

1.48.    ***Final Order*** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument or rehearing shall have expired; provided, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

1.49.    ***Governmental Bar Date*** means January 5, 2026, the date that is 180 days after the Petition Date and the date by which any Governmental Units asserting a Claim against any Debtor must have filed a Proof of Claim or application for allowance of such Claim (as applicable) with the Bankruptcy Court against any such Debtor or be forever barred from asserting such Claim.

1.50.    ***General Unsecured Claim*** means any unsecured nonpriority Claim against the Debtors, other than Intercompany Claims or Subordinated Claims.  General Unsecured Claims shall not include Claims that are not Allowed or are released, whether by operation of law or pursuant to order of the Bankruptcy Court, written release or settlement, the provisions of the Plan or otherwise.

1.51.    ***Governmental Unit*** has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.52.    ***Impaired*** means, with respect to a Claim, Interest, or Class of Claims or Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

1.53.    ***Initial Distribution*** means the first Distribution that either the Debtors or the Liquidating Trustee, as applicable, makes to holders of Allowed Claims.

1.54.    ***Initial Distribution Date*** means the date selected by the Debtors or the Liquidating Trustee, as applicable, which date shall be on or as soon as reasonably practicable

after the Effective Date, on which the Debtors or the Liquidating Trustee, as applicable, will make the Initial Distribution through the Disbursing Agent.

1.55.    ***Insured Claim*** means any Claim or portion of a Claim that is, or may be, insured under any of the Debtors' insurance policies.

1.56.    ***Intercompany Claim*** means a Claim by a Debtor against another Debtor or its direct or indirect subsidiary or affiliate.

1.57.    ***Intercompany Interest*** means an Interest held by a Debtor or a direct or indirect subsidiary or affiliate of a Debtor in another Debtor or a direct or indirect subsidiary or affiliate of a Debtor.

1.58.    ***Interest*** means any equity security (as defined in section 101(16) of the Bankruptcy Code) of a Debtor, including all membership interests, shares, common stock, preferred stock, or other instrument evidencing any fixed or contingent ownership interest in any Debtor, whether or not transferable, and any option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Debtors, whether fully vested or vesting in the future, including, without limitation, equity or equity-based incentives, grants, or other instruments issued, granted or promised to be granted to current or former employees, directors, officers, or contractors of the Debtors.

1.59.    ***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.60.    ***Liquidating Trust*** means that certain trust established pursuant to <u>Section 6.3</u> hereof and the Liquidating Trust Agreement to, among other things, hold and, as applicable, monetize the Liquidating Trust Assets (including though the assertion of Causes of Action), make Distributions to holders of Allowed Claims pursuant to this Plan and wind-down the Debtors' estates after the Effective Date.

1.61.    ***Liquidating Trust Agreement*** means the trust agreement governing the Liquidating Trust that will be filed with the Plan Supplement, and which shall be in form and substance acceptable to the Prepetition Term Loan Administrative Agent.

1.62.    ***Liquidating Trust Assets*** means (i) the Trust Administration Reserve, (ii) all remaining assets of each of the Debtors that have not been sold or abandoned prior to the Effective Date following payment of (or establishment of appropriate reserves for) all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Fee Claims, Allowed Other Priority Claims, Allowed Secured Claims, U.S. Trustee Fees and the Trust Administration Reserve, (iii) all assets recovered by the Liquidating Trustee on behalf of the Liquidating Trust on or after the Effective Date through enforcement, resolution, settlement, collection, return, or otherwise, (iv) all Causes of Action, other than those expressly waived and/or released pursuant to this Plan or sold in connection with a Sale Transaction, including (y) any remaining Avoidance Actions, and (z) Causes of Action against any current or former insurers of the Debtors or any insurance policies of the Debtors (or rights to proceeds thereunder), except as expressly set forth in the Sale Order and the Asset Purchase Agreement; (v) all rights in insurance policies and proceeds of the Debtors; and (vi) any proceeds resulting from the Liquidating Trustee's investment

of the Liquidating Trust Assets on or after the Effective Date owned by the Debtors on the Effective Date.

1.63.    ***Liquidating Trust Beneficiaries*** shall mean collectively the holders of Allowed Claims against the Debtors to the extent entitled to a distribution under the Plan.

1.64.    ***Liquidating Trust Expenses*** means any and all reasonable fees, costs and expenses incurred by the Liquidating Trust or the Liquidating Trustee (or any professional or other Person retained by the Liquidating Trustee) on or after the Effective Date in connection with any of their duties under the Plan and the Liquidating Trust Agreement, including any administrative fees, attorneys' fees and expenses, insurance fees, taxes and escrow expenses.

1.65.    ***Liquidating Trustee*** means such Person designated as trustee of the Liquidating Trust by the Debtors (with the consent of the Prepetition Term Loan Administrative Agent) pursuant to the Liquidating Trust Agreement.

1.66.    ***Other Priority Claim*** means any Claim against any of the Debtors entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim, a Fee Claim, or a Priority Tax Claim.

1.67.    ***Person*** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit or other entity.

1.68.    ***Petition Date*** means July 8, 2025.

1.69.    ***Plan*** means this joint chapter 11 plan, including the exhibits hereto, as the same may be amended or modified from time to time in accordance with <u>Section 9.4</u> herein.

1.70.    ***Plan Supplement*** means the compilation of documents and forms of documents, schedules and exhibits to be filed no later than seven (7) calendar days prior to the deadline for voting on this Plan, as may be supplemented, which shall contain draft forms, signed copies, or summaries of material terms, as the case may be of, (i) the Liquidating Trust Agreement; (ii) the Assumption Schedule; and (iii) any other document necessary or appropriate to implement the Plan, as each document may be amended or supplemented from time to time in accordance with its terms or the terms of the Plan, in each case subject to the consent of the Prepetition Term Loan Administrative Agent.

1.71.    ***Prepetition ABL Facility*** means the Second Amended & Restated ABL Credit Agreement, dated as of September 27, 2021 (as amended, restated, modified, or supplemented from time to time), between Mosaic Companies, LLC, as lead borrower, together with certain subsidiaries, Surfaces Southeast, LLC, and Walker & Zanger, LLC, as borrowers, and Wallec Enterprises, LLC, and Mosaic Midco, LLC, as guarantors, and the financial institutions as lenders thereto from time to time and Truist Bank, as administrative agent and collateral agent, which had an initial revolving commitment of $40,000,000 but which had, as of the Petition Date, an aggregate outstanding amount of approximately $14,000,000 with approximately $650,000 committed to outstanding letters of credit.

1.72.    ***Prepetition Term Loan Administrative Agent*** means Oaktree Fund Administration, LLC, as administrative agent under the Prepetition Term Loan Facility.

1.73.    ***Prepetition Term Loan Claim*** means all Claims derived from, based upon, or related to, the Prepetition Term Loan Facility, including all Claims in respect of principal, interest, fees, premiums, expenses, costs, and reimbursement obligations.

1.74.    ***Prepetition Term Loan Facility*** means that certain Credit Agreement, dated as of July 2, 2021 (as amended, restated, supplemented, or otherwise modified from time to time), among Mosaic Companies, LLC, as borrower, Surfaces Southeast, LLC, Walker & Zanger, LLC, Wallec Enterprises, LLC and Mosaic Midco, LLC, as guarantors, and Oaktree Fund Administration, LLC, as administrative agent, and the lenders from time-to-time party thereto, which provided for an initial aggregate principal amount of $117,000,000, which had, as of the Petition Date, an aggregate outstanding amount of approximately $51 million, and was secured by a security interest on substantially all the Debtors' assets, subject to the relative priorities between the Prepetition ABL Facility and the Prepetition Term Loan Facility under that certain intercreditor agreement, between Truist Bank and Oaktree Fund Administration, LLC, dated July 2, 2021.

1.75.    ***Prepetition Term Loan Lenders*** means the lenders from time-to-time party thereto under the Prepetition Term Loan Facility.

1.76.    ***Prepetition Term Loan Secured Claim*** means that portion of the Prepetition Term Loan Claim that is a Secured Claim.

1.77.    ***Prepetition Term Loan Secured Parties*** means the Prepetition Term Loan Administrative Agent and the Prepetition Term Loan Lenders.

1.78.    ***Prepetition Term Loan Unsecured Claim*** means that portion of the Prepetition Term Loan Claim that is not a Secured Claim.

1.79.    ***Priority Tax Claim*** means any secured or unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.80.    ***Pro Rata Share*** means the proportion that an Allowed Claim or Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interests within such Class or within Classes of the same priority.

1.81.    ***Professional*** means a Person retained in the Chapter 11 Cases pursuant to and in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code.

1.82.    ***Professional Fees Account*** shall mean a segregated account funded by the Debtors in accordance with section 2.3 of the Plan for the purpose of payment of Allowed Fee Claims.

1.83.    ***Proof of Claim*** means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

1.84.    ***Related Parties*** has the meaning set forth in the definition of "Released Parties."

1.85.    ***Released Parties*** means collectively, and in each case, solely in their respective capacities as such: (i) the Debtors; (ii) the current managers, directors, officers, authorized persons, and members of management of the Debtors for conduct occurring on and after the Petition Date; (iii) the Wind-Down Estates; (iv) the Prepetition Term Loan Secured Parties; (v) [any additional party agreed to by the Debtors subject to the completion of investigation, negotiation, and/or settlement by the Debtors' Special Committee; and (vi)] with respect to any Person or Entity in the foregoing clauses (i) through [(iv)/(v)], the predecessors, successors and assigns, subsidiaries, members, partners, managers, officers, directors, employees, agents, attorneys, advisors, accountants, financial advisors, investment bankers, consultants, and other professionals (collectively, the "Related Parties").

1.86.    ***Releasing Parties*** means collectively, and in each case, solely in their respective capacities as such: (i) the Released Parties; (ii) with respect to any Person or Entity in the foregoing clause, the Related Party of such Person or Entity solely with respect to derivative claims that such Related Party could have properly asserted on behalf of a Released Party; provided, however, that the Persons and Entities identified in part (i) shall be Releasing Parties only to the extent such Persons or Entities are legally entitled to bind the corresponding Persons and Entities in part (ii) to the releases contained in the Plan under applicable non-bankruptcy law.

1.87.    ***Restructuring Expenses*** means all reasonable and documented fees and expenses of the Prepetition Term Loan Secured Parties incurred in connection with the Chapter 11 Cases and the Prepetition Term Loan Facility, whether incurred prepetition or postpetition.

1.88.    ***Sale Order*** means one or more orders of the Bankruptcy Court approving any Sale Transaction.

1.89.    ***Sale Transaction*** means one or more Asset Sales, as approved by the Bankruptcy Court pursuant to the Sale Order.

1.90.    ***Schedules*** means the schedules of assets and liabilities filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time.

1.91.    ***Secured Claim*** means a Claim to the extent, under applicable non-bankruptcy law, it is (i) secured by property of the Estate, the amount of which is equal to or less than the value of such property (A) as agreed to by the holder of such Claim and the Debtors, upon notice or opportunity to object, or (B) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any validly preserved and asserted rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

10

1.92.     ***Subordinated Claim*** means any prepetition Claim against the Debtors that is subject to subordination pursuant to section 509 or 510 of the Bankruptcy Code or otherwise or any Claim for reimbursement, indemnification, or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim.

1.93.     ***Tax Code*** means the Internal Revenue Code of 1986, as amended from time to time.

1.94.     ***Trust Administration Reserve*** means a cash reserve sufficient to fund the distributions on account of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Fee Claims, Allowed Other Priority Claims, and U.S. Trustee Fees required to be made under the Plan and to pay expenses and costs of administering the Liquidating Trust and the Wind-Down Estates.[2]

1.95.     ***U.S. Trustee*** means the United States Trustee for Region 3.

1.96.     ***U.S. Trustee Fees*** means fees arising under 28 U.S.C. § 1930(a)(6), and accrued interest thereon arising under 31 U.S.C. § 3717.

1.97.     ***Unexpired Lease*** means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.98.     ***Unimpaired*** means, with respect to a Claim, Interest or Class of Claims or Interests, not "impaired" within the meaning of section 1123(a)(4) and 1124 of the Bankruptcy Code.

1.99.     ***Wind-Down Estates*** means the Estates of the Debtors after the Effective Date.

## B.     Interpretation; Application of Definitions and Rules of Construction.

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained therein.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  For purposes herein: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (iii) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (iv) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the

---

[2]     [NTD: to discuss amount.]

meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

### C.    Controlling Document.

In the event of an inconsistency between the Plan and any other document, the terms of the Plan shall control (unless expressly stated otherwise herein or in such other document).  The provisions of the Plan and the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; <u>provided</u> that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order or the Liquidating Trust Agreement that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order or the Liquidating Trust Agreement, as applicable, shall govern and any such provision of the Confirmation Order or the Liquidating Trust Agreement, as applicable, shall be deemed a modification of the Plan and shall control and take precedence.

### SECTION 2.    ADMINISTRATIVE EXPENSE, FEE CLAIMS, PRIORITY TAX CLAIMS, AND U.S. TRUSTEE FEES.

2.1    *Administrative Expense Claims.*

Except to the extent that a holder of an Allowed Administrative Expense Claim and the Debtors or the Liquidating Trustee agree to different treatment, the Debtors or the Liquidating Trustee, as applicable, shall pay to each holder of an Allowed Administrative Expense Claim, other than Fee Claims, Cash in an amount equal to such Claim on or the first Business Day after, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date and (ii) the date such Administrative Expense Claim is Allowed.

Holders of Administrative Expense Claims, other than Fee Claims, that were required to file and serve a request for payment of such Administrative Expense Claims and that did not file and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtors or their property, or the Liquidating Trust or the Liquidating Trust Assets.  The Debtors or the Liquidating Trustee, as applicable, may file and serve objections to Administrative Expense Claims on or before the Claims Objection Deadline.

2.2    *Time for Filing Administrative Expense Claims.*

Each holder of an Administrative Expense Claim, other than:

(i)    a Fee Claim;

(ii)    an Administrative Expense Claim that has been allowed on or before the Effective Date;

(iii)    a 503(b)(9) Claim;

(iv)    an Administrative Expense Claim on account of fees and expenses incurred on or after the Petition Date but before the Effective Date by ordinary course professionals retained by the Debtors pursuant to an order of the Bankruptcy Court;

(v)    an Administrative Expense Claim arising, in the ordinary course of business, out of the employment by one or more Debtors of an individual from and after the Petition Date but before the Effective Date, but only to the extent that such Administrative Expense Claim is solely for outstanding wages, commissions, accrued benefits, or reimbursement of business expenses;

(vi)    U.S. Trustee Fees;

(vii)    Restructuring Expenses; or

(viii)    an Intercompany Claim,

must file with the Bankruptcy Court and serve on the Debtors, the Liquidating Trustee, the Claims Agent, and the U.S. Trustee, **proof of such Administrative Expense Claim so as to be received by 5:00 p.m. prevailing Eastern time on the Administrative Expense Claims Bar Date**. Proof of an Administrative Expense Claim must include at a minimum: (i) the name of the applicable Debtor that is purported to be liable for the Administrative Expenses Claim; (ii) the name of the holder of the Administrative Expense Claim; (iii) the amount of the Administrative Expense Claim; (iv) the basis of the Administrative Expense Claim; and (v) supporting documentation for the Administrative Expense Claim. **FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE EXPENSE CLAIM TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE EXPENSE CLAIM BEING FOREVER BARRED AND RELEASED.**

2.3    *Fee Claims.*

(a)    *Professional Fees Account.*  On the Effective Date, the Debtors or the Liquidating Trustee, as appropriate, shall fund the Professional Fees Account. Fee Claims shall be paid in Cash from funds held in the Professional Fees Account when such Claims are Allowed by a Final Order of the Bankruptcy Court.  Neither the Debtors' nor the Liquidating Trust's obligations to pay Fee Claims shall be limited nor be deemed limited to funds held in the Professional Fees Account.

(b)    *Estimation of Fee Claims*.  No later than five (5) days before the anticipated Effective Date, Professionals shall provide a good faith estimate of their Fee Claims projected to be outstanding as of the Effective Date and shall deliver such estimate to the Debtors. Such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such Professional and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtors may estimate the unbilled fees and expenses of such Professional. The total amount so estimated shall be utilized by the Debtors to determine the amount to be funded to the Professional Fees Account. The Debtors or the Liquidating Trustee shall use Cash on hand to increase the amount of the Professional Fees Account to the extent fee applications are filed after the Effective Date in excess of the amount held in the Professional Fees Account based on such estimates.

(c)     *Payment of Fee Claims.*   All entities seeking an award by the Bankruptcy Court of Fee Claims (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is forty-five (45) days after the Effective Date, and (ii) shall be paid in full from the Professional Fees Account in such amounts as are Allowed by the Bankruptcy Court (A) in accordance with an order entered by the Bankruptcy Court approving the interim compensation of Professionals, (B) upon the later of the Effective Date and the date upon which the order relating to any such Allowed Fee Claim is entered, or (C) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtors or the Liquidating Trustee, as applicable.   Objections to such Fee Claims, if any, must be filed and served no later than twenty-one (21) calendar days after the filing of such fee application or such other date as established by the Bankruptcy Court.

The Liquidating Trustee is authorized to pay compensation for services rendered or reimbursement of expenses incurred by any Professional after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval in accordance with the Liquidating Trust Agreement.  For the avoidance of doubt, such compensation and reimbursement shall include compensation and reimbursement to the Debtors' Professionals for services rendered and expenses incurred after the Effective Date.  When all Allowed Fee Claims have been paid in full, any remaining amount in the Professional Fees Account shall promptly be released from such escrow and revert to, and ownership thereof shall vest in, the Liquidating Trust without any further action or order of the Bankruptcy Court.

(d)     *Professional Fees Account Not Property of the Liquidating Trust*.  Until payment in full of all Allowed Fee Claims, funds held in the Professional Fees Account shall not be considered Liquidating Trust Assets or otherwise property of the Liquidating Trust, the Debtors, or their Estates.  The Professional Fees Account shall be treated as a trust account for the benefit of holders of Fee Claims and for no other parties until all Allowed Fee Claims have been paid in full in Cash.  No other Liens, claims, or interests shall encumber the Professional Fees Account or Cash held in the Professional Fees Account in any way.

2.4     *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Debtors or the Liquidating Trustee, as applicable, (i) Cash in an amount equal to such Allowed Priority Tax Claim on the later of (a) forty five (45) calendar days after the Effective Date (or as soon as reasonably practicable thereafter), (b) the first Business Day after the date that is thirty (30) days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and (c) the date such Allowed Priority Tax Claim is due and payable in the ordinary course, or as soon thereafter as is reasonably practicable, or (ii) equal annual Cash payments in an aggregate amount equal to the amount of such Allowed Priority Tax Claim, together with interest at the applicable rate under section 511 of the Bankruptcy Code, over a period not exceeding five (5) years from and after the Petition Date.

2.5    *U.S. Trustee Fees*.

All U.S. Trustee Fees due and payable prior to the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date or as soon as is reasonably practicable thereafter. On and after the Effective Date, the Debtors or the Liquidating Trustee shall pay any and all U.S. Trustee Fees in full in Cash when due and payable. Notwithstanding the limited substantive consolidation described in Section 3 of this Plan, each Debtor or the Liquidating Trustee shall remain obligated to pay U.S. Trustee Fees until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. All U.S. Trustee Fees are Allowed. The U.S. Trustee shall not be required to file any Administrative Claim in the case and shall not be treated as providing any release under the Plan with respect to the payment of the U.S. Trustee Fees

2.6    *Restructuring Expenses.*

The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date, shall be paid in full in Cash on the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases) in accordance with the Plan, without any requirement to file a fee application with the Bankruptcy Court, without the need for itemized time detail, or without any requirement for Bankruptcy Court review or approval. All Restructuring Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least three Business Days before the anticipated Effective Date; provided, however, that such estimates shall not be considered an admission or limitation with respect to such Restructuring Expenses. At least three Business Days prior to the Effective Date, summary invoices for all Restructuring Expenses incurred prior to and as of the Effective Date shall be submitted to the Debtors. In addition, the Debtors and the Reorganized Debtors (as applicable) shall continue to pay, when due and payable in the ordinary course, Restructuring Expenses related to the implementation, consummation, and defense of the Plan, whether incurred before, on or after the Effective Date.

**SECTION 3.    CLASSIFICATION OF CLAIMS AND INTERESTS.**

3.1    *Classification in General.*

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; provided that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

3.2    *Formation of Debtor Groups for Convenience Only.*

This Plan (including, but not limited to, Section 2 and Section 3 of the Plan) groups the Debtors together solely for the purpose of describing treatment under this Plan, confirmation of this Plan, and Distributions to be made in respect of Claims against and Interests in the Debtors under this Plan. Except as provided in Section 6 of the Plan, such groupings shall not affect each Debtor's status as a separate legal entity, change the organizational structure of the Debtors'

business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, or cause the transfer of any assets.

3.3    *Summary of Classification.*

The table below designates the Classes of Claims against and Interests in each of the Debtors and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code and (iii) deemed to reject the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in this Section 3. All the potential Classes for the Debtors are set forth herein.

Only holders of Claims in Classes 2 and 3 are Impaired and entitled to vote on the Plan. The Estates will not be substantively consolidated; *provided*, *however*, that for purposes of voting and distribution under the Plan, the Estates shall be deemed merged and consolidated, and treated as a single Estate.

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Other Priority Claims | Unimpaired | No (Presumed to accept) |
| 2 | Prepetition Term Loan Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Subordinated Claims | Impaired | No (Deemed to reject) |
| 5 | Interests | Impaired | No (Deemed to reject) |
| 6A | Intercompany Claims | Impaired | No (Deemed to reject) |
| 6B | Intercompany Interests | Impaired | No (Deemed to reject) |

3.4    *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors or the Liquidating Trustee, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

## SECTION 4.    TREATMENT OF CLAIMS AND INTERESTS.

4.1    *Other Priority Claims (Class 1).*

(a)    *Classification*: Class 1 consists of Allowed Other Priority Claims against the Debtors.

(b)    *Treatment*: Except to the extent that a holder of an Allowed Other Priority Claim against any of the Debtors has agreed to less favorable treatment of such Claim, each such holder shall receive, in full and final satisfaction of such Claim, Cash in an amount equal

to such Claim, payable on the later of (i) forty-five (45) calendar days after the Effective Date (or as soon as reasonably practicable thereafter) and (ii) the first Business Day after thirty (30) days from the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, or as soon as reasonably practical thereafter.

(c)      *Voting*: Class 1 is Unimpaired, and the holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Priority Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Other Priority Claims.

4.2      *Prepetition Term Loan Secured Claims (Class 2).*

(a)      *Classification*: Class 2 consists of the Prepetition Term Loan Secured Claims.

(b)      *Allowance*: The Prepetition Term Loan Claims (including the Prepetition Term Loan Secured Claim and the Prepetition Term Loan Unsecured Claim) shall be Allowed in the amount of $[51.1 million],[3] plus all fees and expenses owing under the Prepetition Term Loan Facility.

(c)      *Treatment*: Except to the extent that a holder of an Allowed Prepetition Term Loan Secured Claim against any of the Debtors has agreed to less favorable treatment of such Claim, each such holder shall receive (i) 100% of all Cash of the Debtors as of the Effective Date, other than Cash required on the Effective Date to fund the Trust Administrative Reserve, the Professional Fees Account, U.S. Trustee Fees, and Restructuring Expenses, (ii) 100% of Class A Liquidating Trust Interests, which shall entitle the holders of Allowed Prepetition Term Loan Secured Claims to all distributable proceeds of the Liquidating Trust other than the proceeds of Avoidance Actions (including, for the avoidance of doubt, any proceeds of any Asset Sales, any residual cash in the Trust Administrative Reserve after administration of the Liquidating Trust and residual cash in the Professional Fees Account after satisfaction of Allowed Professional Fees), and (iii) payment in full of all Restructuring Expenses incurred by or on behalf of the Prepetition Term Loan Secured Parties.  The foregoing treatment, together with the receipt of distributions on account of the Prepetition Term Loan Unsecured Claim, shall be in final satisfaction of the Prepetition Term Loan Claims.

(d)      *Voting*: Class 2 is Impaired, and the holders of Prepetition Term Loan Secured Claims are entitled to vote to accept or reject the Plan.

4.3      *General Unsecured Claims (Class 3).*

(a)      *Classification*: Class 3 consists of General Unsecured Claims against the Debtors.

---

[3]     [NTD: to include interest through Petition Date.]

(b)      *Treatment*: Each holder of an Allowed General Unsecured Claim shall receive in full satisfaction, settlement, and release of, and in exchange for such Allowed General Unsecured Claim, 100% of Class B Liquidating Trust Interests.

(c)      *Voting*: Class 3 is Impaired, and the holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

4.4      *Subordinated Claims (Class 4).*

(a)      *Classification*: Class 4 consists of Subordinated Claims against the Debtors.

(b)      *Treatment*: Subordinated Claims will be extinguished, cancelled, and released on the Effective Date.  Holders of Subordinated Claims shall not receive or retain any distribution under the Plan on account of such Subordinated Claims.

(c)      *Voting*: Class 4 is Impaired, and the holders of Subordinated Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, the holders of Subordinated Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Claims.

4.5      *Interests (Class 5).*

(a)      *Classification*: Class 5 consists of Interests in the Debtors.

(b)      *Treatment*: Interests shall be extinguished, cancelled, and released on the Effective Date.  Holders of Interests shall not receive or retain any distribution under the Plan on account of such Interests.

(c)      *Voting*: Class 5 is Impaired, and the holders of Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, the holders of Interests are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Interests.

4.6      *Intercompany Claims and Intercompany Interests (Class 6A and Class 6B).*

(a)      *Classification*: Classes 6A and 6B consist of Intercompany Claims against and Intercompany Interests in the Debtors.

(b)      *Treatment*: On or after the Effective Date, all Allowed Intercompany Claims and Intercompany Interests shall be adjusted, continued, settled, reinstated, discharged, or eliminated, in each case to the extent determined to be appropriate by the Debtors or the Liquidating Trustee (as applicable).

(c)      *Voting*: Classes 6A and 6B are Impaired, and the holders of Intercompany Claims and Intercompany Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, the holders of Intercompany

18

Claims and Intercompany Interests are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Claims or Interests.

## SECTION 5.     ACCEPTANCE OR REJECTION OF THE PLAN.

5.1     *Class Acceptance Requirement.*

A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in dollar amount of the Allowed Claims in such Class and more than one-half (1/2) in number of holders of such Claims, in each case, that have voted on the Plan.

5.2     *Tabulation of Votes on a Non-Consolidated Basis.*

All votes to accept or reject the Plan shall be tabulated on a consolidated basis by Class for the purpose of determining whether the Plan satisfied sections 1129(a)(8) and/or 1129(a)(10).

5.3     *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or "Cramdown".*

Because certain classes are deemed to have rejected the Plan, the Debtors will request confirmation of the Plan, as it may be modified and amended from time to time, under section 1129(b) of the Bankruptcy Code with respect to such Classes.  Subject to Sections 13.5 and 13.6 of this Plan, the Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

5.4     *Elimination of Vacant Classes.*

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

5.5     *Voting Classes; Deemed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the holders of such Claims or Interests in such Class.

## SECTION 6.     MEANS FOR IMPLEMENTATION.

6.1     *Joint Chapter 11 Plan.*

The Plan is a joint chapter 11 plan for each of the Debtors, with the Plan for each Debtor being non-severable and mutually dependent on the Plan for each other Debtor, except to the extent the Debtors elect to sever one or more Debtors from this Plan.

6.2     *Plan Funding*.

Distributions under the Plan shall be funded from Cash on hand, including the proceeds of the Asset Sales, as well as from Cash realized from other Liquidating Trust Assets.

6.3     *Liquidating Trust*.

(a)     *Execution of the Liquidating Trust Agreement*.  On or substantially contemporaneously with the Effective Date, the Liquidating Trust Agreement shall be executed, and all other necessary steps shall be taken to establish the Liquidating Trust to hold the Liquidating Trust Assets, which shall be for the benefit of the Liquidating Trust Beneficiaries. Section 6.3 of the Plan sets forth certain of the rights, duties, and obligations of the Liquidating Trustee.  In the event of any conflict between the terms of Section 6.3 of the Plan and the terms of the Liquidating Trust Agreement, unless otherwise specified in the Plan, the terms of the Liquidating Trust Agreement shall govern.

(b)     *Purpose of the Liquidating Trust*. The Liquidating Trust shall be established in accordance with the Liquidating Trust Agreement to administer post-Effective Date responsibilities of the Debtors and Wind-Down Estates under the Plan, including, but not limited to, (i) being vested with, and liquidating, the Liquidating Trust Assets, (ii) making Distributions to holders of Allowed Claims in accordance with the terms of this Plan and the Liquidating Trust Agreement, (iii) resolving all Disputed Claims and effectuating the Claims reconciliation process pursuant to the procedures prescribed in this Plan, (iv) prosecuting, settling, and resolving Causes of Action that are Liquidating Trust Assets, (v) recovering, through enforcement, resolution, settlement, collection, or otherwise, assets on behalf of the Liquidating Trust (which assets shall become part of the Liquidating Trust Assets), (vi) winding down the affairs of the Debtors and their subsidiaries, if and to the extent necessary, including taking any steps to dissolve, liquidate, bankrupt or take other similar action with respect to each Debtor and their subsidiaries, including by terminating the corporate or organizational existence of each such Debtor and subsidiary, and (vii) performing all actions and executing all agreements, instruments and other documents necessary to effectuate the purpose of the Liquidating Trust.

Notwithstanding anything to the contrary in this Section 6.3, the Liquidating Trust's primary purpose is liquidating the Liquidating Trust Assets, with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the Liquidating Trust's liquidating purpose and reasonably necessary to conserve and protect the Liquidating Trust Assets and provide for the orderly liquidation thereof.

(c)     *Liquidating Trust Assets*.  The Liquidating Trust shall consist of the Liquidating Trust Assets.  Except as otherwise provided in this Plan or the Confirmation Order, on the Effective Date, the Debtors shall be deemed to have transferred all of the Liquidating Trust Assets held by the Debtors to the Liquidating Trust, and all Liquidating Trust Assets shall vest in the Liquidating Trust on the Effective Date, to be administered by the Liquidating Trustee, in accordance with this Plan and the Liquidating Trust Agreement, free and clear of all Liens, Claims, encumbrances and other Interests.  The Debtors may take all actions as may be necessary or appropriate to effectuate the Plan that are consistent with and pursuant to the terms and conditions of the Plan.

20

       (d)    *Liquidating Trustee*.  The Liquidating Trustee may be replaced in accordance with the Liquidating Trust Agreement.  The Liquidating Trustee shall have no duties until the occurrence of the Effective Date, and on and after the Effective Date shall be a fiduciary of each of the Wind-Down Estates.  The powers, rights and responsibilities of the Liquidating Trustee shall be as specified in the Liquidating Trust Agreement and Plan and shall include the authority and responsibility to fulfill the items identified in this <u>Section 6.3</u> of the Plan.  Other rights and duties of the Liquidating Trustee and the Liquidating Trust Beneficiaries shall be as set forth in the Liquidating Trust Agreement.

       (e)    *Functions of the Liquidating Trustee*.  On and after the Effective Date, and subject to the Trust Administration Reserve, the Liquidating Trustee shall carry out the functions set forth in this <u>Section 6.3</u> and may take such actions without further approval by the Bankruptcy Court, in accordance with the Liquidating Trust Agreement.  Such functions may include any and all powers and authority to:

       (i)    take all steps and execute all instruments and documents necessary to make Distributions to holders of Allowed Claims and to perform the duties assigned to the Liquidating Trustee under the Plan or the Liquidating Trust Agreement;

       (ii)    comply with and effectuate the Plan and the obligations hereunder;

       (iii)    employ, retain or replace professionals to represent him or her with respect to his or her responsibilities;

       (iv)    wind up the affairs of the Debtors and their subsidiaries, if and to the extent necessary, including taking any steps to dissolve, liquidate, bankrupt, or take other similar action with respect to each Debtor and subsidiary, including by terminating the corporate or organizational existence of each such Debtor or subsidiary;

       (v)    take any actions necessary to (A) resolve all matters related to the Liquidating Trust Assets and (B) vest such assets in the Liquidating Trust;

       (vi)    make Distributions of the Cash in the Liquidating Trust and any proceeds thereof, in excess of any amounts necessary to pay Liquidating Trust Expenses, in accordance with the terms of this Plan;

       (vii)    prepare and file appropriate tax returns and other reports on behalf of the Debtors and pay taxes or other obligations owed by the Debtors (including, without limitation, any Allowed Administrative Expense Claims and Allowed Priority Tax Claims asserted by taxing authorities);

       (viii)    file, prosecute, settle or dispose of any and all objections to asserted Claims;

       (ix)    in consultation with and with the consent of the Prepetition Term Loan Administrative Agent, file, prosecute, settle or dispose of any and all Causes of Action other than Avoidance Actions;

(x)    file, prosecute, settle or dispose of any and all Avoidance Actions;

(xi)    establish and maintain the Disputed Claims Reserve;

(xii)    enter into and consummate any transactions for the purpose of dissolving the Debtors and their subsidiaries;

(xiii)    take such actions as are necessary or appropriate to close any of the Debtors' Chapter 11 Cases;

(xiv)    maintain the books and records and accounts of the Debtors; and

(xv)    take any other actions not inconsistent with the provisions hereof that the Liquidating Trustee deems reasonably necessary or desirable in connection with the foregoing functions.

(f)    *Fees and Expenses of the Liquidating Trust*.  From and after the Effective Date, Liquidating Trust Expenses shall be paid from the Liquidating Trust Assets in the ordinary course of business, in accordance with the Plan and the Liquidating Trust Agreement. Without any further notice to any party or action, order or approval of the Bankruptcy Court, the Liquidating Trustee, on behalf of the Liquidating Trust, may employ professionals and pay in the ordinary course of business the reasonable fees of any employed professional for services rendered or expenses incurred on and after the Effective Date that, in the discretion of the Liquidating Trustee, are necessary to assist the Liquidating Trustee in the performance of the Liquidating Trustee's duties under the Plan and the Liquidating Trust Agreement, subject to any limitations and procedures established by the Liquidating Trust Agreement.

(g)    *Creation and Maintenance of Trust Accounts*.  On or prior to the Effective Date, appropriate trust accounts may be established and maintained in one or more federally insured domestic banks in the name of the Liquidating Trust.  Cash deposited in the trust accounts will be invested, held and used solely as provided in the Liquidating Trust Agreement. The Liquidating Trustee is authorized to establish additional trust accounts after the Effective Date, consistent with the terms of the Liquidating Trust Agreement, as applicable.  After the funding of the trust accounts on the Effective Date, the trust accounts will be funded, as applicable, by Cash proceeds obtained through litigation, settlement, disposition or other monetization of the Liquidating Trust Assets.  Upon obtaining an order of the Bankruptcy Court authorizing a final Distribution or closure of all of the Debtors' Chapter 11 Cases, any funds remaining in the trust accounts shall be distributed in accordance with this Plan and the Liquidating Trust Agreement, and the trust accounts may be closed.

(h)    *Indemnification of Liquidating Trustee*.  The Liquidating Trustee and its agents and professionals shall not be liable for actions taken or omitted in their respective capacities as, or on behalf of, the Liquidating Trustee or the Liquidating Trust, except those acts arising out of its or their gross negligence, actual fraud or willful misconduct, each as determined by a Final Order from a court of competent jurisdiction.  The Liquidating Trustee (and its agents and professionals) shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its or their actions or inactions in its or their capacity as, or on behalf of,

the Liquidating Trustee or the Liquidating Trust, except for any actions or inactions involving gross negligence, actual fraud or willful misconduct, each as determined by a Final Order from a court of competent jurisdiction.  Any indemnification claim of the Liquidating Trustee and the other parties entitled to indemnification under this subsection shall be satisfied from the Liquidating Trust Assets, as provided in the Liquidating Trust Agreement.  The Liquidating Trustee shall be entitled to rely, in good faith, on the advice of its professionals.

(i)     *Insurance*.  The Liquidating Trustee shall be authorized, but not required, to obtain any reasonably necessary insurance coverage, at the Liquidating Trust's sole expense, for itself and its respective agents, including coverage with respect to the liabilities, duties and obligations of the Liquidating Trustee, which insurance coverage may, at the sole option of the Liquidating Trustee, be extended for a reasonable period after the termination of the Liquidating Trust Agreement.

(j)     *Records*. The Liquidating Trustee shall be provided with originals or copies of or access to all documents and business records of the Debtors necessary for the disposition of Liquidating Trust Assets and resolving Disputed Claims.

6.4     *Elimination of Duplicate Claims*

Any duplicate Claim or Interest or any Claim or Interest that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the claims register by the Debtors or the Liquidating Trustee, as applicable, (i) upon stipulation between the parties in interest without a Claim objection having to be filed and without any further notice or action, order, or approval of the Bankruptcy Court, or (ii) a notice of satisfaction filed on the docket and served on the applicable claimant or interest holder, provided, that such modification shall become effective only after ten days' notice to parties in interest and an opportunity to object.

6.5     *Corporate Action.*

Upon the Effective Date, all actions contemplated by the Plan (including any action to be undertaken by the Liquidating Trustee or the Debtors) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Interests, the Debtors, the Liquidating Trustee or any other Entity or Person. All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Debtors' Estates.

6.6     *Directors, Officers, Managers, Members and Authorized Persons of the Debtors.*

On the Effective Date, each of the Debtors' managers, directors, officers, and other authorized persons shall be discharged from their duties and terminated automatically without the need for any corporate action or approval and without the need for any corporate filings, and, unless subject to a separate agreement with the Liquidating Trustee, shall have no continuing obligations to the Debtors following the occurrence of the Effective Date.  The Liquidating Trustee

shall thereafter have sole and exclusive corporate authority over the Debtors and the Wind-Down Estate.

6.7     *D&O Policy.*

As of the Effective Date, the D&O Policies and coverage for defense and indemnity under any of the D&O Policies shall remain in full force and effect subject to the terms and conditions of the D&O Policies. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' transfer of each D&O Policy to the Liquidating Trust. Notwithstanding anything to the contrary contained in the Plan, and except as otherwise may be provided in an order of the Bankruptcy Court, confirmation of the Plan shall not impair or otherwise modify any obligations of the D&O Policies. For the avoidance of doubt, the D&O Policies provide coverage for those insureds currently covered by such policies for the remaining term of such policies and runoff or tail coverage after the Effective Date to the fullest extent permitted by such policies. On and after the Effective Date, the Debtors, the Wind-Down Estates, or the Liquidating Trustee shall not terminate or otherwise reduce the coverage under any of the D&O Policies in effect or purchased as of the Petition Date, and all managers, directors and officers of the Debtors at any time shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such managers, directors and/or officers remain in such positions after the Effective Date. For the avoidance of doubt, nothing herein shall be construed as the Debtors assuming any obligation with respect to any self-insured retention for which the applicable insurer has the ability to assert a prepetition Claim against the applicable Debtor in accordance with the order setting the Bar Date or other order of the Bankruptcy Court.

6.8     *Indemnification of Managers, Directors, Officers and Employees.*

For purposes of the Plan, the obligation of the Debtors to indemnify and reimburse any Person or entity serving at any time on or after the Petition Date as one of their managers, directors, officers or employees by reason of such Person's or entity's service in such capacity, or as a manager, director, officer or employee of any of the Debtors, to the extent provided in such Debtor's constituent documents, a written agreement with the Debtor(s), in accordance with any applicable law, or any combination of the foregoing, shall survive confirmation of the Plan and the Effective Date.

6.9     *Withholding and Reporting Requirements.*

(a)     *Withholding Rights.*  In connection with the Plan, any party issuing any instrument or making any distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, provincial or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements. Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan shall be liable for any taxes imposed by any Governmental Unit, including, without limitation, income, withholding, and other taxes, on account of such distribution. Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

(b)     *Forms*.   Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Liquidating Trustee or such other Person designated by the Liquidating Trustee (which entity shall subsequently deliver to the Liquidating Trustee any applicable IRS Form W-8 or Form W-9 received) an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8 or any other form or document as reasonably requested by the Liquidating Trustee or such other Person designated by it to eliminate or reduce any tax (including withholding tax), unless the Liquidating Trustee or such other Person designated by it determines it is not required to eliminate or reduce any tax (including withholding tax).  If such request is made by the Liquidating Trustee or such other Person designated by the Liquidating Trustee and the holder fails to comply before the date that is 150 days after the request is made, the amount of such distribution shall irrevocably revert to the Liquidating Trust, and any Claim in respect of such Distribution shall be forever barred from assertion against any Debtor and its respective property.

6.10     *Exemption From Certain Transfer Taxes.*

To the maximum extent provided by section 1146 of the Bankruptcy Code, under this Plan, (i) the issuance, distribution, transfer or exchange of any debt, equity security or other interest in the Debtors; or (ii) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan, shall not be taxed under any law imposing a stamp tax or similar tax.  To the extent that the Debtors or Liquidating Trustee elects to sell any property after the Confirmation Date, such sales of property will be exempt from any transfer taxes in accordance with section 1146(a) of the Bankruptcy Code.  All subsequent issuances, transfers or exchanges of securities, or the making or delivery of any instrument of transfer by the Debtors in the Chapter 11 Cases shall be deemed to be or have been done in furtherance of this Plan.

6.11     *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Liquidating Trustee and the Debtors are authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

6.12     *Preservation of Rights of Action.*

Other than Causes of Action against an Entity that are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Bankruptcy Court order entered prior to the Effective Date, the Debtors reserve and preserve any and all Causes of Action, and on the Effective Date, such causes of Action shall vest in the Liquidating Trust, free and clear of all Claims, Liens, encumbrances and other interests, and shall become Liquidating Trust Assets.  On and after the Effective Date, the Liquidating Trustee shall have sole and exclusive discretion to pursue and dispose of any such Causes of Action that are or become Liquidating Trust Assets.  No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to

any Cause of Action against them as any indication that the Debtors, and on and after the Effective Date, the Liquidating Trustee, will not pursue any and all available Causes of Action against them. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. Prior to the Effective Date, the Debtors (and on and after the Effective Date, the Liquidating Trustee) shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

> 6.13    *Closing of the Chapter 11 Cases.*

On or after the Effective Date, the Liquidating Trustee or the Debtors, shall be authorized to file a motion requesting entry of one or more orders of this Court closing any of the Chapter 11 Cases.  Such motion may be heard by the Court on fourteen days' notice to the U.S. Trustee and all other parties entitled to notice under Local Rule 2002-1(b).  Each Wind-Down Estate shall be entitled to appoint the Liquidating Trustee to prosecute claims and defenses and through the Disbursing Agent, make distributions, and attend to other wind down affairs on behalf of each of the other prior Debtors as if such Wind-Down Estates continued to exist solely for that purpose.  The Liquidating Trustee shall, promptly after the full administration of the Chapter 11 Cases, file with this Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court, and file a motion under Local Rule 3022-1(a) to close the Chapter 11 Case of any Debtor whose case remains open at that time.  Upon the filing of such a motion, the Liquidating Trustee shall file a final report with respect to all the Chapter 11 Cases pursuant to Local Rule 3022-1(c).

6.14    *Dissolution of the Committee.*

On the Effective Date, the Committee shall dissolve, and the members thereof and the professionals retained by the Committee thereof shall be released and discharged from all rights and duties arising from, or related to, these chapter 11 cases; provided, however, that following the Effective Date, the Committee shall continue in existence and have standing and a right to be heard for the following limited purposes: (a) applications, and any relief related thereto, for compensation and requests for allowance of fees and/or expenses under section 503(b) of the Bankruptcy Code, (b) to enforce the releases and exculpations under Section 11 of the Plan of the Committee, the Committee's members (solely in their capacity as such), and the Committee's Related Parties, and (c) any appeals of the Confirmation Order, the Sale Order, or any other appeal to which the Committee is or was a party in interest.

## SECTION 7.    DISTRIBUTIONS.

7.1    *Distribution Record Date.*

The Debtors and the Liquidating Trustee shall have no obligation to recognize any transfer of the Claims or Interests (i) occurring on or after the Effective Date, or (ii) that does not comply with the Bankruptcy Code or Bankruptcy Rules, including Bankruptcy Rule 3001(e).

7.2    *Date of Distributions.*

Except as otherwise provided herein, the Debtors or the Liquidating Trustee, as applicable, shall direct the Initial Distribution to holders of Allowed Claims no later than the Initial Distribution Date.  After the Initial Distribution Date, the Liquidating Trustee shall, from time to time, determine the subsequent Distribution Dates.

7.3    *Delivery of Distributions.*

The Disbursing Agent shall make all distributions, allocations, and/or issuances required under the Plan.  In the event that any Distribution to any holder is not deposited or returned as undeliverable, no Distribution to such holder shall be made unless and until the Debtors or the Liquidating Trustee, as applicable, has determined the then current address of such holder, at which time such Distribution shall be made to such holder without interest; provided, however, such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the date such Distribution was made.  After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Liquidating Trust automatically and without need for a further order by the Bankruptcy Court for Distribution in accordance with the Plan and the Claim of any such holder to such property or interest in property shall be released, settled, compromised, and forever barred.

7.4    *Manner of Payment Under Plan.*

At the option of the Debtors, the Liquidating Trustee or the Disbursing Agent, as applicable, any Cash payment to be made hereunder may be made by a check or wire transfer from the Disbursing Agent.  Any wire transfer fees incurred in connection with the transmission of a

wire transfer will be deducted from the amount of the Distribution a holder of an Allowed Claim would otherwise receive.  The Debtors, the Liquidating Trustee, or the Disbursing Agent, as applicable, will, to the extent practicable, make aggregate Distributions on account of all the Allowed Claims held by a particular holder.

7.5    *Minimum Cash Distributions.*

No intermediate Distribution shall be required to be made to any holder of an Allowed Claim on any Distribution Date of Cash less than [$1,000]; provided, however, that if any Distribution is not made pursuant to this <u>Section 7.5</u>, such Distribution shall be added to any subsequent Distribution to be made on behalf of the holder's Allowed Claim.  The Debtors, the Liquidating Trustee and the Disbursing Agent shall not be required to make any final Distributions of Cash less than [$100] to any holder of an Allowed Claim.

7.6    *Setoffs.*

The Debtors or the Liquidating Trustee may, but shall not be required to, set off against any Claim, any Claims of any nature whatsoever that the Debtors or the Liquidating Trustee have against the holder of such Claim; provided that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Liquidating Trustee of any such Claim the Debtors or the Liquidating Trustee may have against the holder of such Claim.

7.7    *Allocation of Distributions Between Principal and Interest.*

Except as otherwise provided in this Plan, to the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

7.8    *No Postpetition Interest on Claims.*

Except as otherwise provided in the Plan, the Confirmation Order, or another order of the Bankruptcy Court, or required by the Bankruptcy Code, postpetition interest shall not accrue or be paid on any Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date.

7.9    *No Distribution in Excess of Amount of Allowed Claim.*

Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a Distribution in excess of the Allowed amount of such Claim.

**SECTION 8.        PROCEDURES FOR DISPUTED CLAIMS.**

8.1    *Objections to Claims.*

As of the Effective Date, objections to, and requests for estimation of Claims against the Debtors may be interposed and prosecuted by the Liquidating Trustee.  Such objections and requests for estimation shall be served and filed on or before the Claims Objection Deadline, as such deadline may be extended from time to time by order of the Bankruptcy Court entered before or after the then-current Claims Objection Deadline.

8.2    *Allowance of Claims.*

After the Effective Date, the Liquidating Trust shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim against a Debtor, except with respect to any Claim expressly Allowed under this Plan.  Except as expressly provided in this Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is expressly Allowed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Cases allowing such Claim.

8.3    *Estimation of Claims.*

The Debtors or the Liquidating Trustee, as applicable, may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim, pursuant to section 502(c) of the Bankruptcy Code regardless of whether any party in interest previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or the maximum limit of such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Liquidating Trustee may pursue supplementary proceedings to object to the allowance of such Claim. All the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

8.4    *No Distributions Pending Allowance.*

No payment or Distribution provided under the Plan shall be made on account of a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim; provided that payment or Distribution may be made on an Allowed portion of a Claim pending adjudication of the Disputed portion of such Claim in the discretion of the Liquidating Trustee.

8.5    *Resolution of Claims.*

Except as otherwise provided herein (including the release provisions hereof) or in the Confirmation Order, or in any contract, instrument, release, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy

Code, on and after the Effective Date, the Liquidating Trustee may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Liquidating Trust may hold against any Person, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith.  From and after the Effective Date, the Liquidating Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court; provided that (a) any settlement of a Disputed Claim that results in an Allowed Claim in excess of $[●] must be made after notice and an opportunity for parties-in-interest to object and (b) any settlement of a Disputed Claim other than a General Unsecured Claim shall be with the consent of the Prepetition Term Loan Administrative Agent.

8.6     *Amendments to Claims and Late Filed Claims.*

Following the Effective Date, except as otherwise provided in this Plan (including with respect to the filing of Claims by Governmental Units by the Governmental Bar Date), the Confirmation Order, or the Liquidating Trust Agreement, no Claim may be filed, amended, or supplemented without the approval of the Bankruptcy Court or without the prior written authorization of the Liquidating Trustee, and any such new or amended Claim filed without such prior authorization shall be deemed disallowed in full and expunged without any further action, order or approval of the Bankruptcy Court.

**SECTION 9.     EXECUTORY CONTRACTS AND UNEXPIRED LEASES.**

9.1     *Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned (including any Executory Contract or Unexpired Lease assumed and assigned in connection with a Sale Transaction) shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (i) as of the Effective Date is subject to a pending motion to assume such Unexpired Lease or Executory Contract; (ii) is a contract, lease, or other agreement or document entered into in connection with the Plan; (iii) is a D&O Policy or an insurance policy; or (iv) is identified for assumption on the Assumption Schedule included in the Plan Supplement.  Executory Contracts and Unexpired Leases identified for assumption on the Assumption Schedule shall be deemed assumed pursuant to section 365 of the Bankruptcy Code as of the Effective Date.

9.2     *Claims Based on Rejection of Executory Contracts and Unexpired Leases.*

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan must be filed with Bankruptcy Court and served on the Liquidating Trustee no later than thirty (30) days after the notice of occurrence of the Effective Date.  The notice of occurrence of the Effective Date shall include the date by which Proofs of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases must be filed.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be forever barred from**

**assertion, and shall not be enforceable against the Debtors, the Liquidating Trust, the Debtors' Estates, or the property for any of the foregoing, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.**

9.3     *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

Any Cure Obligation due under each Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment in full in Cash on the Effective Date (or as soon as reasonably practicable thereafter), subject to the limitation described below, by the Debtors or the Liquidating Trust, as applicable, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

In the event of a dispute regarding (i) the amount of the Cure Obligation, (ii) the ability of the Liquidating Trust or any other applicable assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease, or (iii) any other matter pertaining to assumption or assumption and assignment (as applicable), the obligations of section 365 of the Bankruptcy Code shall be deemed satisfied following the entry of one or more Final Orders, which may include the Confirmation Order, resolving the dispute and approving the assumption or assumption and assignment (as applicable); provided, that the Debtors or the Liquidating Trust (as applicable) may settle any dispute regarding the amount of any Cure Obligation without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any defaults, subject to satisfaction of the Cure Obligations, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the Effective Date of assumption and/or assignment.  Any prepetition default amount set forth in the Schedules and/or any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

9.4     *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

      9.5    *Reservation of Rights.*

Neither the exclusion nor inclusion of any contract or lease in the Assumption Schedule or the Sale Order, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors' Estates have any liability thereunder.  In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Liquidating Trustee, as applicable, shall have sixty 60 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

## SECTION 10.    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE.

      10.1    *Conditions Precedent to the Effective Date.*

The occurrence of the Effective Date of the Plan is subject to the following conditions precedent:

      (a)    the Bankruptcy Court shall have entered the Confirmation Order, and the Confirmation Order shall have become a Final Order;

      (b)    the DIP Orders shall be in full force and effect, and there shall be no event of default under the DIP Orders, which has not been waived by the Prepetition Term Loan Administrative Agent;

      (c)    all funding, actions, documents and agreements necessary to implement and consummate the Plan and the transactions and other matters contemplated thereby, shall have been effected or executed, including the funding of the Trust Administration Reserve;

      (d)    the Sale Transaction shall have been consummated in accordance with the relevant acquisition agreement and Sale Order, and the proceeds of the Artivo Sale shall have been distributed in accordance with the DIP Orders;

      (e)    the Liquidating Trust shall be established and validly existing and the Liquidating Trust Agreement shall have been executed;

      (f)    all actual and estimated Restructuring Expenses shall have been paid in full in accordance with Section 2.6 of the Plan;

      (g)    the Debtors shall have funded the Professional Fees Account in accordance with Section 2.3 herein;

      (h)    the Trust Administration Reserve shall have been funded;

(i)        no Governmental Unit or federal or state court of competent jurisdiction shall have enacted, issued, promulgated, enforced or entered any law or order (whether temporary, preliminary or permanent), in any case which is in effect and which prevents or prohibits consummation of the Plan or any of the other transactions contemplated hereby and no Governmental Unit shall have instituted any action or proceeding (which remains pending at what would otherwise be the Effective Date) seeking to enjoin, restrain or otherwise prohibit consummation of the transactions contemplated by the Plan;

(j)        all authorizations, consents, regulatory approvals, rulings or documents that are necessary to implement and effectuate the Plan as of the Effective Date shall have been received, waived or otherwise resolved; and

(k)        all documents and agreements necessary to implement the Plan, including those set forth in the Plan Supplement, shall have (i) been tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

10.2    *Waiver of Conditions Precedent.*

Each of the conditions precedent in Section 10.1 other than the condition set forth in Section 10.1(a) may be waived in writing by the Debtors and the Prepetition Term Loan Administrative Agent. Any such waivers may be effected at any time, without notice, without leave or order of the Bankruptcy Court and without any formal action.

10.3    *Substantial Consummation.*

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

10.4    *Notice of Effective Date.*

On or promptly following the Effective Date, the Debtors shall file a notice stating that the Effective Date has occurred.

10.5    *Effect of Vacatur of Confirmation Order.*

If the Confirmation Order is vacated, (i) no distributions under the Plan shall be made, (ii) the Debtors and all holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iii) all the Debtors' obligations with respect to the Claims and the Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any other entity in any further proceedings involving the Debtors or otherwise.

**SECTION 11.    SETTLEMENT, RELEASES, INJUNCTIONS, AND RELATED PROVISIONS.**

11.1    *Release of Liens.*

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised and all rights, titles, and interests of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall revert to the Debtors and vest in the Liquidating Trust.

11.2    *Binding Effect.*

Confirmation of the Plan does not provide the Debtors with a discharge under section 1141 of the Bankruptcy Code because the Plan is a liquidating chapter 11 plan.  Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Effective Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, the Debtors, and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

11.3    *Term of Injunctions or Stays.*

Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

11.4    *Releases by the Debtors.*

**As of the Effective Date, except (i) for the rights that remain in effect from and after the Effective Date to enforce the Plan or the Sale Transaction; and (ii) as otherwise provided in the Plan or in the Confirmation Order, for good and valuable consideration, including their cooperation and contributions to the Chapter 11 Cases, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, to the maximum extent permitted by law, by the Releasing Parties, including Debtors and the Estates (including the Wind-Down Estates), in each case, on behalf of themselves and their respective successors (including the Liquidating Trust), assigns, and representatives, and any and all other persons that may purport to assert any Cause of Action derivatively, by, through or on behalf of the foregoing Persons and Entities, from any and all Claims and Causes of Action, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, in whole or in part, the Debtors, the Chapter 11 Cases, the Sale Transaction, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the**

34

administration or implementation of the Plan, including the issuance or distribution of the Liquidating Trust Assets pursuant to the Plan, the creation of the Liquidating Trust, the business or contractual arrangements between any Debtor and any Released Party, the Disclosure Statement, the Plan (including the Plan Supplement), or the solicitation of votes with respect to the Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary to the foregoing, the release set forth above does not release any post-Effective Date obligations of any Person under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Sale Transaction.

11.5    *Exculpation.*

To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each of the Exculpated Parties are hereby exculpated from, any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for any Claim arising on or after the Petition Date through the Effective Date in connection with, related to, or arising out of the filing or administration of the Chapter 11 Cases, the negotiation and approval of the Asset Sales, the postpetition purchase, sale, or rescission of the purchase or sale of any security or asset of the Debtors; the negotiation and pursuit of the Disclosure Statement, the Sale Transaction, the Plan, or the solicitation of votes for, or confirmation of, the Plan; the funding or consummation of the Plan; the occurrence of the Effective Date; the property to be distributed under the Plan (including Liquidating Trust Assets); the creation and administration of the Liquidating Trust; or the transactions in furtherance of any of the foregoing; except for actual fraud, criminal acts, or willful misconduct, as determined by a Final Order.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties from liability.  Notwithstanding anything to the contrary in the foregoing, the exculpation set forth herein does not release any post-Effective Date obligation or liability of any Entity or Person under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

11.6    *Injunction.*

(a)    From and after the Effective Date, all Persons and Entities who have held, hold, or may hold Claims against or Interests in the Debtors (whether or not proof of such Claims or Interests has been filed and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action that will be or are extinguished or released pursuant to the Plan, from taking any of the following actions against the Debtors, the Released Parties, the Liquidating Trustee or the Liquidating Trust, or the property of any of the Debtors, the Released Parties, the Liquidating Trustee or the Liquidating Trust (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit,

action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum); (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind; (iv) asserting setoff unless such setoff was formally asserted in a timely Filed proof of Claim or in a pleading Filed with the Bankruptcy Court prior to entry of the Confirmation Order (notwithstanding any indication in any proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff) or right of subrogation of any kind against any debt, liability, or obligation due to the Debtors; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

(b)     Upon the Bankruptcy Court's entry of the Confirmation Order, all Holders of Claims and Interests, and other parties in interest, along with their Related Persons, shall be enjoined from taking any actions to interfere with the implementation or substantial Consummation of this Plan by the Debtors, the Liquidating Trustee and/or their respective Related Persons, as applicable.

(c)     The benefit of the injunctions in this <u>Section 11.7</u> shall extend to any successors of the Debtors, the Liquidating Trustee, the Liquidating Trust, the Released Parties, and their respective property and interests in property.

## SECTION 12.     RETENTION OF JURISDICTION.

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, or related to the Chapter 11 Cases for, among other things, the following purposes:

(a)     to hear and determine motions and/or applications for the assumption or rejection of Executory Contracts or Unexpired Leases and the allowance, classification, priority, compromise, estimation or payment of Claims resulting therefrom;

(b)     to determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date, including any such motions, adversary proceeding, application, contested matter or other litigated matter brought by the Liquidating Trustee;

(c)     to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d)     to consider Claims or the allowance, classification, priority, compromise, estimation or payment of or objection to any Claim;

(e)     to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(f)     to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the Consummation, implementation or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(g)     to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)     to hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred before the Confirmation Date;

(i)     to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, the Sale Order, the Liquidating Trust Agreement, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)     to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following Consummation;

(k)     to hear any disputes arising out of, and to enforce, any order approving alternative dispute resolution procedures to resolve personal injury, employment litigation and similar Claims pursuant to section 105(a) of the Bankruptcy Code;

(l)     to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)     to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(n)     to adjudicate any and all disputes arising from or relating to Distributions under the Plan;

(o)     to hear, determine and resolve any cases, matters, controversies, suits, disputes or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including with respect to the releases, exculpation and injunction provisions contained in Section 11 of the Plan and the Confirmation Order;

(p)     to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(q)     to enter one or more final decrees closing the Chapter 11 Cases;

(r)    to interpret and enforce the Confirmation Order and all other orders previously entered by the Bankruptcy Court in these Chapter 11 Cases;

(s)    to recover all assets of the Debtors and property of the Debtors' Estates, wherever located;

(t)    to hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory; and

(u)    any other matters that may arise in connection with or relate to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, the Sale Order or any contract, instrument, release, indenture, or other agreement or document created in connection therewith.

## SECTION 13.    MISCELLANEOUS PROVISIONS.

13.1    *No Revesting of Assets.*

To the extent not otherwise distributed in accordance with this Plan, the property of the Debtors' Estates shall not revest in the Debtors on or after the Effective Date but shall instead vest in the Liquidating Trust, to be administered by the Liquidating Trustee in accordance with this Plan and the Liquidating Trust Agreement.

13.2    *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective Distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, sections 509 and 510 of the Bankruptcy Code, or otherwise. Pursuant to sections 509 and 510 of the Bankruptcy Code, the Debtors reserve the right for the Liquidating Trustee to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

13.3    *Payment of Statutory Fees.*

All U.S. Trustee Fees due and payable prior to the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date or as soon as is reasonably practicable thereafter. On and after the Effective Date, the Debtors or the Liquidating Trustee shall pay any and all U.S. Trustee Fees in full in Cash when due and payable. Notwithstanding the limited substantive consolidation described in Section 3 of this Plan, each Debtor or the Liquidating Trustee shall remain obligated to pay U.S. Trustee Fees until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. All U.S. Trustee Fees are Allowed. The U.S. Trustee shall not be required to file any Administrative Claim in the case and shall not be treated as providing any release under the Plan with respect to the payment of the U.S. Trustee Fees. The provisions of this Section 13.3 control and govern any provisions of the Plan to the contrary.

The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Liquidating Trustee and each of Wind-Down Estates shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.

13.4    *Amendments.*

(a)    *Plan Modifications*. Prior to the Effective Date, the Plan may be amended, modified or supplemented by the Debtors, with the consent of the Prepetition Term Loan Administrative Agent, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law or as ordered by the Bankruptcy Court, without additional disclosure pursuant to section 1125 of the Bankruptcy Code. In addition, after the Confirmation Date but before substantial consummation of the Plan, the Debtors may, with the consent of the Prepetition Term Loan Administrative Agent, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

(b)    *Other Amendments*. Before the Effective Date, to the extent provided in section 1127 of the Bankruptcy Code, the Debtors, may make appropriate technical adjustments and modifications to the Plan and any of the documents prepared in connection herewith without further order or approval of the Bankruptcy Court but with the consent of the Prepetition Term Loan Administrative Agent (not to be unreasonably withheld).

13.5    *Revocation or Withdrawal of the Plan.*

The Debtors reserve the right to revoke or withdraw the Plan for all Debtors prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (ii) nothing contained in the Plan shall: (A) constitute a waiver or release of any Claims or Interests; (B) prejudice in any manner the rights of the Debtors, the Debtors' Estates, or any other Entity; or (C) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors, the Debtors' Estates, or any other Entity.

13.6    *Severability of Plan Provisions Upon Confirmation.*

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The

Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Liquidating Trustee (as the case may be) and the Prepetition Term Loan Administrative Agent; and (iii) nonseverable and mutually dependent.

13.7    *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

13.8    *Time.*

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

13.9    *Additional Documents.*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

13.10    *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the holders of Claims and Interests, the Releasing Parties, the Released Parties, the Exculpated Parties, and each of their respective successors and assigns, including, without limitation, the Liquidating Trustee.

13.11    *Successor and Assigns.*

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or permitted assign, if any, of each Entity.

13.12    *Entire Agreement.*

On the Effective Date, the Plan and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

13.13   *Notices.*

All notices, requests and demands to or upon the Debtors or the Liquidating Trustee, as applicable, to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

      (a)    <u>if to the Debtors</u>:

**Mosaic Companies, LLC**
400 Technology Ct. Ste R
Smyrna, GA 30082
Attention:    Randall Jackson

   -and-

**Morris Nichols Arsht & Tunnell LLP**
1201 North Market Street
Wilmington, DE 19899-1347
Attention:    Derek C. Abbott
                 Matthew B. Harvey
                 Sophie Rogers Churchill
                 Avery Jue Meng
Telephone:    302-658-9200
Facsimile:    302-658-3989

      (b)    if to the Liquidating Trustee, to the parties designated for notice and in the manner set forth in the Liquidating Trust Agreement.

After the Effective Date, the Debtors have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entities must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Liquidating Trust is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to (i) the Prepetition Term Loan Administrative Agent, (ii) those Entities who have filed such renewed requests, and (iii) those Entities whose rights are affected by such documents.

Dated:  [●], 2025

                 Respectfully submitted,

                 By:_____
                     Name:
                     Title: